2023 IL App (1st) 220791

No. 1-22-0791

Opinion filed May 22, 2023

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| NEUSA SAUER, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | No. 2020 L 8250 |
| CHICAGO TRANSIT AUTHORITY, a Municipal Corporation, | ) ) ) | The Honorable |
| Defendant-Appellee. | ) ) ) | Preston Jones, Jr. Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Lavin and Justice Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1 Neusa Sauer sued the Chicago Transit Authority (CTA) for injuries sustained when she tripped and fell on uneven pavement while stepping off a CTA bus. Sauer's initial timely filed complaint listed a nonexistent intersection as the location of the accident. The trial court granted the CTA's motion to dismiss without prejudice. Sauer's second amended complaint correctly identified the location, but the trial court dismissed it, with prejudice, as barred by the statute of limitations. The court found the location a material element of the claim, and under section 2-616(b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-616(b) (West

2020)), the second amended complaint did not relate back to the filing of the original complaint.

¶ 2    The parties agree that the statute of limitations bars Sauer's second amended complaint unless it "relates back" to her original complaint. Sauer contends the relation back doctrine applies based on a prelitigation Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)) request and other correspondence from her attorney informing the CTA of the correct location. We disagree and affirm. Even if the FOIA request put the CTA on notice, which it did not, the CTA cannot be deemed to have known the correct location because Sauer provided conflicting information on the location in both the original and first amended complaints.

¶ 3                                    Background

¶ 4    On the morning of February 19, 2020, Sauer rode a CTA bus to her office on Michigan Avenue. According to Sauer, the driver drove past a designated CTA stop at the intersection of Hubbard Street and Lower Michigan Avenue, pulling over in an area with damaged and uneven pavement. When Sauer stepped off, she tripped and fell, breaking her leg.

¶ 5    About a week later, Sauer's attorney sent a notice of attorney's lien to the CTA's claims department stating he represented Sauer "regarding claims for personal injuries suffered by her on February 19, 2020, on Illinois & Hubbard Street." A CTA claims representative acknowledged receipt of the lien notice and asked Sauer's attorney for more information about Sauer and her claim. Sauer did not respond to this request.

¶ 6    Sauer's attorney sent a handwritten FOIA request to the CTA's FOIA officer asking for "any and all video surveillance footage of CTA bus # 7939 traveling on 2/19/20 from the hours of 7:00 a.m.—9 a.m.," and listing Sauer's Ventra card number. The FOIA request did not state

the location of Sauer's fall, but in an accompanying e-mail, Sauer's attorney asked for "any and all video surveillance videos and/or footage for the area between Illinois Street and Hubbard Street on Lower Michigan Avenue for the date of February 19, 2020, between the hours of 7:00 a.m.—9:30 a.m. on CTA bus #7939." The e-mail further stated, "[m]y client fell after being dropped off by a CTA bus." Neither the FOIA request nor the e-mail mentioned Sauer had filed a notice of claim or might take legal action.

¶ 7        On March 27, 2020, the CTA's FOIA office informed Sauer's attorney that the "CTA performed a reasonable search but found no video footage responsive to your request." In September 2020, Sauer's attorney e-mailed an attorney purportedly in the CTA's torts division, asking him to "look into this [FOIA] request and see who is handling it. I find it odd that there is no video associated with this request ***." Nothing in the record suggests the CTA attorney knew about Sauer's case, and Sauer's attorney acknowledged at oral argument that the attorney never responded to the e-mail.

¶ 8                                        Procedural History

¶ 9        Sauer timely filed a two-count complaint on August 5, 2020, alleging common carrier negligence against the CTA (count I) and the unnamed CTA bus driver (count II). The complaint placed the incident near the intersection of Hubbard Street and Lower Wacker Drive rather than Lower Michigan Avenue, the correct location.

¶ 10        The CTA moved to strike and dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), arguing, in part, that the complaint failed to plead facts sufficient to maintain a cause of action, including by properly alleging "where the injury took place." Sauer sought to strike the CTA's appearance and responsive pleadings and enter a default judgment for failing

to answer or plead timely. The trial court granted the CTA's motion to dismiss in part, allowed Sauer to amend, and denied Sauer's motion.

¶ 11    On July 27, 2021, Sauer filed an amended complaint, alleging a single common carrier negligence claim. Sauer repeated the allegation that she fell at Hubbard Street and Lower Wacker Drive. The CTA moved to strike and dismiss under section 2-619 of the Code (*id.* § 2-619), arguing Lower Wacker Drive and Hubbard Street do not intersect and, without a proper location, Sauer had failed to plead a material element of her negligence claim. The trial court dismissed without prejudice and gave Sauer leave to amend.

¶ 12    Not until September 1, 2021, did Sauer file her second amended complaint correctly identifying the intersection as Hubbard Street and Lower Michigan Avenue. Once more, the CTA moved to dismiss under section 2-619, this time as barred under the one-year statute of limitations for personal injury claims against the CTA. See 70 ILCS 3605/41 (West 2020) (Metropolitan Transit Authority Act). The CTA argued that by changing the location, a material element, the second amended complaint alleged a new occurrence that did not relate back to the initial complaint under section 2-616(b) of the Code. See 735 ILCS 5/2-616(b) (West 2020). Sauer argued that the CTA had proper notice of the correct location through her prelitigation FOIA request, so the CTA was not prejudiced.

¶ 13    Although the trial court agreed the CTA was not prejudiced, it held Sauer had failed to allege the correct location before the limitations period expired and, accordingly, the relation back doctrine did not operate. In its memorandum opinion and order dismissing the second amended complaint with prejudice, the trial court found that the location was material because, without knowing it, the CTA could not investigate the allegedly "hazardous conditions, which include the condition of the pavement, broken curbs and sidewalks, and alleged dumpsters and

roadways that were in disrepair and posed a danger to the Plaintiff." The court noted that Sauer listed "Lower Wacker Drive and Hubbard Street" as the location in her initial complaint and first amended complaint, "roads [that] run parallel to one another and do not intersect at an existing bus stop location." Because the second amended complaint, filed after the limitations period, changed the location to "Lower [Michigan Avenue] and Hubbard Street," it constituted "an entirely new occurrence" and was time-barred.

¶ 14    The court rejected Sauer's contention that the relation back provision of section 2-616(b) applied, finding Sauer's notice of attorney's lien "listed an incorrect location that conflicted with the incorrect address pled in Plaintiff's Original and First amended complaint." Further, the handwritten FOIA request did not provide a location, and while the accompanying e-mail contained the correct location, it was served on the FOIA department, which does not handle litigation claims. The court distinguished *Wolf v. Meister-Neiberg, Inc.*, 143 Ill. 2d 44 (1991), where the "defendant [was] provided with notice of the proper address through various forms of unambiguous and uncontroverted discovery evidence prior to the expired limitations."

¶ 15                                            Analysis

¶ 16                                       Standard of Review

¶ 17    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint along with all well-pleaded facts and reasonable inferences but asserts affirmative matter outside the complaint to avoid or defeat the action. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352-53 (2008) (citing *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 325 (1995)). Under section 2-619(a)(5), a court may dismiss a cause of action not filed within the time allowed by law. 735 ILCS 5/2-619(a)(5) (West 2020). Our review of a section 2-619 dismissal is *de novo*. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004); *Bryson v. News of America Publications, Inc.*,

174 Ill. 2d 77, 92-109 (1996) (applied *de novo* standard of review to section 2-619 dismissals of defamation claims). When ruling on section 2-619 motion to dismiss, courts construe the pleadings in the light most favorable to the nonmoving party and grant the motion only if the plaintiff can prove no set of facts entitling recovery. *Ferguson*, 213 Ill. 2d at 96-97; *Mazal v. Arias*, 2019 IL App (1st) 190660, ¶ 18.

¶ 18                                    Relation Back Doctrine

¶ 19        The parties agree that her claim is barred unless the second amended complaint "relates back" to Sauer's initial timely filed complaint. Section 2-616(b) governs amendments to pleadings and the relation back doctrine. Under section 2-616(b), a cause of action alleged in an amended complaint filed after the end of the limitations period relates back to the filing of the original complaint only if (i) the original complaint was filed timely and (ii) the new pleading arises out of the same transaction or occurrence detailed in the original pleading. 735 ILCS 5/2-616(b) (West 2020). To arise out of the original pleading, the amended pleading must provide "defendant with all of the necessary information to prepare his [or her] defense to the subsequently asserted claim." *Cannon v. Bryant*, 196 Ill. App. 3d 891, 895 (1990).

¶ 20        In personal injury cases, the location of the injury constitutes a "necessary and material element" of a claim. For instance, in *Zeh v. Wheeler*, 111 Ill. 2d 266, 268 (1986), the plaintiff brought a claim of negligence against a landlord for failing to maintain a common stairway. After the limitations period expired, the plaintiff amended her complaint to change the address where her injury occurred. *Id.* at 269. Our supreme court considered whether the facts in the original complaint gave the defendant notice of the occurrence that served as the basis of the amended claim. See *id.* at 280-81. The court found nothing in the record indicating the defendant knew or had notice that the original complaint had made a claim for an injury at the

correct location. *Id.* at 281-82. Moreover, location was "significant in that it gives the defendant notice of the occurrence which is to be the basis of the claim against which the defendant will be called upon to defend." *Id.* at 280.

¶ 21     The *Zeh* court concluded that, because maintaining a stairway at one location involved different conduct by different persons at a different time and a different place from maintaining a stairway at another location, changing the address involved different locations and, thus, different occurrences. The correct location did not relate back. *Id.* at 275. And the court upheld the trial court's dismissal. *Id.* at 283.

¶ 22     The *Zeh* court noted that changing a word in an address from "Street" to "Place" would relate back, as it constituted two different descriptions of the same occurrence or locality. (Internal quotation marks omitted.) *Id.* at 276-77. Moreover, because the defendant had no notice of the occurrence except through the pleadings, "we need not here decide to what extent such notice may be considered in determining whether an amendment relates back under the provisions of our code." *Id.* at 282.

¶ 23     Sauer does not contest that her initial and second amended complaints allege different accident locations. But she contends that, unlike the defendant in *Zeh*, the CTA had timely notice of the correct location from communications outside the pleadings and argues the facts are analogous to *Wolf*, 143 Ill. 2d 44.

¶ 24     In *Wolf*, the court held that an amended complaint that changed the location of an occurrence would relate back to the original complaint where the defendants had notice of the correct location before the running of the statute of limitations. *Id.* at 47-48. The plaintiff had filed a complaint based on his slip and fall at a construction site. In his original complaint, the

plaintiff alleged that the site was in Northbrook. *Id.* at 45. After the statute of limitations expired, he amended his complaint to allege the site was in Schaumburg. *Id.* at 45-46.

¶ 25    Although the amended complaint described a different location, the court decided it related back to the original complaint because the defendants did not dispute they had notice of the correct location before the statute of limitations expired by way of deposition testimony and construction project documents received during discovery. *Id.* at 46. The court concluded that, since the defendants were "plainly not prejudiced" by the amendment, it related back. *Id.* at 48.

¶ 26    Sauer contends that, like the plaintiff in *Wolf*, her counsel's March 2020 FOIA request and accompanying e-mail notified the CTA of the correct location; listed her name, Ventra card number, the bus number, and date and time she got on the bus; and that he was representing her for injuries. Further, correspondence from the CTA in response to the FOIA request reveals it knew the correct location.

¶ 27    We disagree. Unlike the defendants in *Wolf*, the CTA did not admit notice of the correct location before the end of the limitations period. First, in *Wolf*, the defendant became aware of the correct location during discovery. Nothing in the record indicates Sauer provided the CTA's claims department or legal department with the correct location through depositions or other discovery. Indeed, her sole communication with the CTA's claims department, a notice of attorney's lien, stated a nonexistent location.

¶ 28    Sauer's FOIA request listed the correct location, but the FOIA request, unlike discovery, did not put the CTA on notice to investigate the allegation and obtain facts necessary to defend itself. The Act does not require that people requesting information explain their need for the information or planned use. *Family Life League v. Department of Public Aid*, 112 Ill. 2d 449,

456 (1986). Thus, that Sauer intended to use the information to pursue a claim against the CTA was unknown to the FOIA officer, and Sauer does not contend otherwise. Under the Act, FOIA officers "ensure that the public body responds to requests in a timely fashion, and issue responses." 5 ILCS 140/3.5(a) (West 2020). They are not tasked with assessing whether a request involves potential legal liability or investigating claims or their merits. And Sauer's FOIA request did not reference a claim or litigation.

¶ 29    Sauer contends correspondence between her attorney and the CTA regarding the FOIA request attests that the CTA knew the correct location. Sauer alleges correspondence on CTA letterhead provides the correct location and that the CTA searched that location. According to Sauer, the FOIA officer copied and pasted the language of the e-mail Sauer's attorney submitted with the FOIA request. But the FOIA officer's use of CTA letterhead does not imply the necessary CTA employees tasked with investigating the merits of a legal claim knew the correct location. Also, the CTA never acknowledged it searched the correct location. The correspondence states only that the CTA "performed a reasonable search but found no video footage responsive to your request" and mentions nothing about searching the accident scene.

¶ 30    Moreover, sending an e-mail inquiring about the FOIA request to a CTA attorney known to Sauer's attorney does not give the CTA notice of the correct location. And Sauer does not allege the CTA attorney had any connection to or knowledge about her case. Further, as noted, the CTA attorney never responded. These facts do not justify a finding that the e-mail notified the CTA of the correct location.

¶ 31    Notwithstanding the FOIA request and other correspondence, Sauer negated their implication by insisting in her initial and first amended complaints that she fell at the corner of Lower Wacker Drive and Hubbard Street. This conflicting information failed to alert the

CTA to the "necessary and material" information it required to prepare a defense. (Internal quotation marks omitted.) See *Zeh*, 111 Ill. 2d at 271, 280.

¶ 32    *Wolf v. Dominick's Finer Foods, Inc.*, 282 Ill. App. 3d 546 (1996), is instructive. There, the plaintiff slipped and fell. *Id.* at 547. Before filing her complaint, the plaintiff sent the defendant two notices of attorney's liens. *Id.* The first notice listed the accident's location as 5747 Dempster Street, and the second listed the location as 6931 Dempster Street. *Id.* The plaintiff then filed a complaint alleging she slipped and fell at 5747 Dempster Street. *Id.* at 548. After the limitations period expired, she sought to amend her complaint with the correct address, 6931 Dempster Street. *Id.* at 550. She argued that the court should allow the untimely amendment because the defendant had timely notice of the correct location. *Id.* at 552-53.

¶ 33    The trial court granted the defendant's motion to dismiss, and we affirmed. We explained that the second notice of lien could not put the defendant on notice because it conflicted with the first notice of lien and the complaint. *Id.* at 553-54. In addition, we rejected the plaintiff's contention that the defendant could have learned the correct location by calling the store managers. *Id.* at 554. The court explained no authority requires the defendant to investigate which location is correct. *Id.*

¶ 34    Similarly, Sauer's attorney's lien did not supply the correct location, and the initial and first amended complaints contradicted the location referred to in the e-mail accompanying the FOIA request. How could the CTA know the correct location when Sauer did not realize the correct location until after the bar of the statute of limitations? Given the conflicting locations, the CTA cannot be deemed to have known.

¶ 35    Affirmed.

*Sauer v. Chicago Transit Authority*, 2023 IL App (1st) 220791

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-L-008789; the Hon. Preston Jones Jr., Judge, presiding. |
| **Attorneys for Appellant:** | George G. Argionis and Jason A. Sanders, of Argionis & Associates, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kent S. Ray, of Chicago Transit Authority, of Chicago (Stephen L. Wood and Irina Y. Dmitrieva, of counsel), for appellee. |